UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Murphy D. Jones,  Case No. 05-40042-R

           Debtor.  Chapter 13
_____/

Opinion and Order Upon Remand

The debtor's attorney filed a fee application requesting approval of fees of $1,917.85 plus costs of $74.33. In an order entered on May 26, 2005, the Court had awarded $500.00 in fees and $74.33 in costs. On appeal, the district court remanded the fee application for determination consistent with *Boddy v. United States Bankr. Ct.* (*In re Boddy*), 950 F.2d 334 (6th Cir. 1991).

Preliminarily, the Court notes that the applicant filed its notice of appeal to the district court on June 13, 2005, which is more than 10 days after the order was entered. Accordingly, the notice of appeal was untimely under FED. R. BANKR. P. 8002(a). It thus appears that the district court lacked jurisdiction to review this Court's May 26, 2005 order. *See Suhar v. Burns* (*In re Burns*), 322 F.3d 421 (6th Cir. 2003). Nevertheless, the Court will comply with the district court's instructions on remand.

As the district court observed in its remand order, *Boddy* held that a bankruptcy court must use the lodestar method in determining whether requested fees are reasonable. 950 F.2d at 337. The lodestar amount is calculated by multiplying the attorney's reasonable hourly rate by the number of reasonable hours performed doing legal work and if any hours are disallowed the bankruptcy court must explain why. Consistent with 11 U.S.C. § 330(a), *Boddy* also held that in exercising its discretion when performing the

lodestar calculation, the bankruptcy court may also consider other factors, including the results obtained.

This chapter 13 case was dismissed because the debtor had a 45% pay history, the funding of the plan had not been properly calculated and at confirmation there were substantial unresolved objections to confirmation of the debtor's plan. It thus appeared to the Court then, as it does now, that the applicant filed this case without the required regard for whether the chapter 13 case was feasible. Under FED. R. BANKR. P. 9011(b), it is the duty of the attorney for a debtor who seeks to file a chapter 13 case to investigate whether a chapter 13 plan is feasible and to file a chapter 13 case only when the feasibility of such a case is reasonably arguable. Moreover, the debtor's attorney has a duty to exercise independent judgment on behalf of the client, MICH. R. PROF. CONDUCT 2.1, and thus cannot file a chapter 13 case simply because the client so instructs. Indeed, this duty of independent judgment is consistent with, and not in conflict with, the attorney's duty of zealous advocacy under MICH. R. PROF. CONDUCT 1.0, because sometimes zealous advocacy of the client's best interests means that the attorney must advise the client not to proceed with a chapter 13 case.

In this case, those obligations were violated. More than that, the debtor did not obtain the benefits of a chapter 13 case. The case was filed because the debtor was faced with the loss of his home through foreclosure resulting from his default in his monthly mortgage payment obligations. The dismissal of the case meant that the mortgage foreclosure could then proceed. It is true that the debtor did receive some benefit from the bankruptcy case; the automatic stay was in effect for 101 days from January 3, 2005, when the case was filed, until April 13, 2005, when the case was dismissed. Because of the apparent lack of feasibility of a chapter 13 plan in this case, it is likely that the case should have been filed in chapter 7, if at all. However, the dismissal meant that the debtor did not even obtain the benefit of a discharge.

The debtor's initial schedule I disclosed monthly net income of $2,451.84 and his initial schedule J disclosed monthly expenses of $1,991.91, leaving $459.93 to fund a chapter 13 plan. The debtor's 36 month plan, filed on January 18, 2005, proposed to pay a 10% dividend to unsecured creditors and to cure the debtor's mortgage arrearage of $897.00.

Almost immediately, on February 2, 2005, the mortgage company filed an objection to confirmation, stating that the arrearage on the mortgage was $8,453.28.

In apparent response to this news, the debtor filed an amended schedule J, reducing his expenses to a meager and unrealistic $1,203.32, thereby increasing the disposable income available for the plan to $1,001.52. This was accomplished by reducing utility expenses from $350 to $210; home maintenance from $50 to $0; food from $350 to 173.41; clothing from $50 to $0; laundry from $25 to $0; medical from $25 to $0; transportation from $150 to $100; recreation from $50 to $25; and payment for a vehicle for wife from $247 to $0. This unrealistic expense budget undoubtedly contributed to the debtor's poor pay history at the time of the confirmation hearing.

Compounding these already significant obstacles to feasibility, the trustee's objection to the plan, filed on March 7, 2005, asserted that the debtor's projected income was overstated on schedule I, based on her calculation from the pay stubs that the debtor had provided. This only meant that there was likely even less money available to fund the plan.

The inevitable result became crystal clear, if it was not already, when on March 17, 2005, the trustee filed a supplemental objection to confirmation on numerous grounds. The more significant objections were that due to a mathematical error in amended schedule J, the debtor's biweekly plan payment should be increased (yet again) from $462.24 to $576.24; that the debtor's statement of financial

affairs was inconsistent with the applicant's rule 2016(b) statement regarding attorney fees; that after the debtor's two auto payment obligations expire, additional funds would be available for payment to creditors through the plan; and the plan proposed a direct payment to a secured creditor even though the payments to that creditor were in arrears.

Predictably, at the confirmation hearing on April 13, 2005, the trustee moved to dismiss the case on the grounds that her objections had not been addressed and the debtor's pay history was only 45%. The debtor's attorney stated that the debtor was not present and that the debtor had no opposition to dismissal. The Court granted the trustee's motion and dismissed the case.

This record overwhelmingly establishes that the applicant should not have recommended or filed a chapter 13 case for this debtor and that the feasibility of a chapter 13 plan was never reasonably arguable due to the lack of net disposable income to cure the substantial mortgage arrearage. Nothing in the record suggests why the applicant could not have readily determined the correct mortgage arrearage amount before filing the case.

The fee application seeks compensation of $1,917.85 for 13.6 hours of services, plus reimbursement of expenses of $74.33. As the district court observed in its remand order, the applicant bears the burden of proving the reasonableness of this request. That burden is especially challenging to meet when the applicant seeks fees for services in a case that should not have been filed. The most natural result of such an analysis would be to conclude that the applicant has not met its burden to establish that any of the hours of service were reasonable or that any of the fees requested are reasonable. Why should any fees be awarded for a case that should not have been filed?

As noted, the applicant's work did enable the debtor to obtain the benefit of the automatic stay for

101 days. The issue is thus to determine the reasonable compensation for obtaining that benefit. Based on the Court's analysis, no hours of service beyond those hours reasonably expended to file the case and obtain the stay are reasonably compensable. According to the application, the only dates on which attorney services were performed to prepare the case for filing were on December 2, 17, and 30, 2004. On those dates, the applicant spent a total of 3 hours at $200.00 per hour, for a total of $600, in services advising the debtor and preparing the papers for filing to obtain the automatic stay. The application also seeks compensation of $52.00 for 0.8 of an hour of service on December 2, 2004, by the applicant's office manager for gathering information from the debtor to prepare documents.

The Court concludes that for its services in preparing the filing, the applicant can reasonably be compensated for no more than 2.5 hours of service at $200 per hour. In the Court's judgment, that is the reasonable value of services performed by the applicant in obtaining the benefit of the automatic stay for the debtor for 101 days. Based on that benefit, the Court reaffirms its prior award of $500.00 in fees plus $74.33 in costs.

Finally, the Court recognizes that the trustee's objection to the fee application was much more limited. That objection identified seven dates on which the trustee contends the time spent was excessive in light of the applicant's hourly rate. The objection further asserts that compensation for attendance at a continued meeting of creditors would be unreasonable because the continued meeting was caused by the applicant's failure to provide copies of the debtor's tax returns. Nevertheless, the Court has an independent duty to determine the reasonableness of requested fees. *See In re Busy Beaver Bldg. Centers, Inc.,* 19 F.3d 833, 843-44 (3d Cir. 1994); 2 COLLIER ON BANKRUPTCY ¶ 330.05[2][a], at 330-37 (15th ed. Lawrence P. King ed. 1993). Accordingly, the Court's review is not limited to a review of

5

the trustee's objections. Any such limitation would be inconsistent with holding of *Boddy* and the remand order from the district court in this case, both of which require the use of the lodestar method to determine a reasonable fee.

For these reasons, the Court again allows fees of $500.00 and costs of $74.33. It is so ordered.

For Publication

**Entered: March 31, 2006**

                                          **/s/ Steven Rhodes**
                                          **Steven Rhodes**
                                          **Chief Bankruptcy Judge**